UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

FRANCIS M.,

                    Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.
_____

**DECISION AND ORDER**

1:23-cv-00620-EAW

## <u>INTRODUCTION</u>

Represented by counsel, Plaintiff Francis M. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.[1] (Dkt. 8; Dkt. 14). For the reasons discussed below, Plaintiff's motion (Dkt. 8) is denied and the Commissioner's motion (Dkt. 14) is granted.

---

[1] Plaintiff filed his motion as "Plaintiff's Brief" rather than a motion, but the Court will treat it as Plaintiff's motion for judgment on the pleadings. (Dkt. 8).

## BACKGROUND

Plaintiff protectively filed his application for DIB on October 15, 2020.[2] (Dkt. 3 at 61, 63, 231). In his application, Plaintiff alleged disability beginning July 28, 2020. (*Id*. at 62, 231). Plaintiff's application was initially denied on May 25, 2021, and then denied upon reconsideration on November 3, 2021. (*Id*. at 62-97). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Ryan A. Alger on November 10, 2022. (*Id*. at 40-60). On November 28, 2022, the ALJ issued an unfavorable decision denying Plaintiff's claim. (*Id.* at 23-34). Plaintiff then requested review by the Appeals Council, which the Council denied on May 18, 2023, making the ALJ's determination the final decision of the Commissioner. (*Id*. at 6-11).

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more

---

[2]    When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Hum. Servs*., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not de novo and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.    <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. § 404.1520(c).  If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 404.1529), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e). The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

**DISCUSSION**

I.     **The ALJ's Decision**

In deciding whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation analysis set forth in 20 C.F.R. § 404.1520 and determined that Plaintiff met the insured status requirements of the Act through December 31, 2025.  (Dkt. 3 at 25).  At step one of the analysis, the ALJ opined that Plaintiff had not engaged in substantial gainful work activity since July 28, 2020, the alleged onset date.  (*Id*.).

At step two, the ALJ found that Plaintiff suffered from several severe impairments: degenerative disc disease of the cervical spine, status cervical fusion; diabetes mellitus; obesity; and mild degenerative changes of the right shoulder.  (*Id*.).  He also determined that Plaintiff's tinnitus, bilateral hearing loss, right carpal tunnel syndrome, status post CTS release, sepsis, and atrial fibrillation were nonsevere impairments.  (*Id*. at 26).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing.  (*Id*. at 27).  Before proceeding to step four, the ALJ concluded that Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except that he could not perform overhead work bilaterally but could occasionally push and pull bilaterally.  (*Id*. at 27-28).

At step four, the ALJ found that Plaintiff was unable to perform his past relevant work but had acquired work skills from his past relevant work that were transferrable to

other occupations. (*Id.* at 32-33). Considering Plaintiff's age, education, and work experience, the ALJ found that there were jobs that existed in significant numbers in the national economy, such as evaluation officer, desk officer, and police clerk that Plaintiff could perform. (*Id.* at 33). As a result, the ALJ concluded that Plaintiff was not disabled from the amended alleged onset date of July 28, 2020, through the date of his decision. (*Id.* at 34).

## II.    <u>The ALJ Determination is Supported by Substantial Evidence.</u>

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ erred in evaluating a medical opinion of consultative examiner Hongbiao Liu, M.D. ("Dr. Lui") and failed to accommodate various limitations in Plaintiff's RFC. (Dkt. 8 at 11-16). For the reasons discussed below, the Court finds Plaintiff's argument without merit.

Under the amendments to the social security regulations related to the evaluation of medical evidence for disability claims filed after March 27, 2017, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). The amended regulations require the ALJ to articulate how persuasive he finds all of the medical opinions and prior administrative medical findings contained in the record based on five factors, with supportability and consistency being the most important factors. 20 C.F.R. § 404.1520c(c); *see also Peets v. Kijakazi*, No.

21-3150, 2022 WL 17725391, at *1 (2d Cir. Dec. 16, 2022) (under the new regulations, the ALJ's declining to "afford controlling weight to a particular medical opinion is not a basis for second-guessing the ALJ's conclusions").

"Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions." *Jacqueline L. v. Comm'r of Soc. Sec*., 515 F. Supp. 3d 2, 8 (W.D.N.Y. 2021) (internal citation omitted).  The ALJ's failure to adequately explain how he considered the supportability and consistency of a medical opinion constitutes procedural error, but it will not necessarily lead to a reversal of the ALJ's finding if "a searching review of the record assures [the court] 'that the substance of the [regulation] was not traversed.'" *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) (quoting *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (internal citation and quotation marks omitted)); *see also Ricky L. v. Comm'r of Soc. Sec*., No. 20-CV-7102-FPG, 2022 WL 2306965, at *4 (W.D.N.Y. June 27, 2022) ("[I]nsofar as the [c]ourt can adequately 'glean' how the ALJ weighed the consistency and supportability factors for Dr. Sandler's opinion, . . . the [c]ourt finds that the ALJ's procedural error harmless as 'the substance of the [regulation] was not traversed.'" (quotations omitted)).

Plaintiff argues that the ALJ's analysis was flawed because he improperly accessed the persuasiveness of Dr. Liu's opinion when he failed to discuss the consistency factor in his analysis. (Dkt. 8 at 12-14). The Court disagrees. Contrary to Plaintiff's argument, the ALJ met his burden when he explicitly considered both factors in his evaluation of Dr. Liu's opinion. Specifically, prior to making his persuasiveness determination, the ALJ discussed Plaintiff's complaints of radiating neck and back pain made to Dr. Liu and recited Dr. Liu's observations of decreased range of motion of Plaintiff's cervical and lumbar spine and shoulders, positive straight leg raise test, and decreased sensation in his right hand, as well as Plaintiff's full strength throughout his upper extremities and full grip strength bilaterally with no evidence of muscle atrophy. (Dkt. 3 at 30). The ALJ then proceeded with his analysis of the remaining medical record and turned to determination of the persuasiveness of medical opinions and prior administrative findings contained in it. That is when the ALJ recited Dr. Liu's opinion of Plaintiff having moderate limitations for lifting, carrying, and overhead reaching, and mild to moderate limitations for prolonged walking, bending, kneeling, squatting, prolonged sitting, standing, and stair climbing. (*Id.* at 31). The ALJ then determined how persuasive the opinion was and found it partially persuasive because it was consistent with Plaintiff's post-operative treatment records and supported by the findings made during the examination, which revealed Plaintiff's decreased range of motion in his cervical and lumbar spine and shoulders, positive straight leg raise, full strength in upper and lower extremities, and full bilateral grip strength. (*Id.*).

This unambiguous mentioning of both factors and the ALJ's reference to Plaintiff post-operative medical records that the opinion was consistent with, as well as the ALJ's recitation of Dr. Liu's specific findings that supported his conclusions, was exactly what the regulations required the ALJ to do when making a determination about persuasiveness of a medical opinion. *See* 20 C.F.R. § 404.1520c(b)(2); *Porteus v. O'Malley*, No. 23-969, 2024 WL 2180203, at *2 (2d Cir. May 15, 2024) (no error to explicitly repeat his prior examination of the record when the ALJ adequately explained that the medical opinions were supported by plaintiff's mental status examinations summarized in the decision and were consistent with plaintiff's treatment notes, hearing testimony, and evidence of his daily activities that were set forth earlier in the ALJ's decision).  The ALJ did not end his analysis there and provided further explanation for finding Dr. Liu's opinion only partially persuasive because the physician did not clearly quantify Plaintiff's limitations in vocationally relevant terms, and because the identified limitations were somewhat speculative and imprecise.  (Dkt. 3 at 31).  Having provided an adequate analysis, the Court finds that the ALJ's evaluation of Dr. Liu's opinion was free of error and does not warrant remand.

Plaintiff also argues that the ALJ's RFC for a full range of sedentary work with occasional pushing and pulling and no overhead work was inconsistent with Dr. Liu's findings of Plaintiff being mildly to moderately limited in prolonged walking, standing, prolonged sitting, bending, kneeling, climbing, and squatting.  (Dkt. 8 at 13).  The Court

finds this argument without merit because it has been well-recognized that mild to moderate limitations in some physical domains are not inconsistent with sedentary work.[3] *See generally Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("[t]he [Commissioner's] regulations do not mandate the presumption that all sedentary jobs in the United States require the worker to sit without moving for six hours, trapped like a seat-belted passenger in the center seat on a transcontinental flight"); *see also Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109 (2d Cir. 2020) (upholding a sedentary RFC based on a consultative examination opinion of "moderate limitation for kneeling and squatting"); *Kevin M. v. Kijakazi*, No. 20-CV-6802L, 2022 WL 2704527, at *2 (W.D.N.Y. July 12, 2022) ("As district courts within this Circuit have repeatedly recognized, moderate limitations in prolonged sitting are not necessarily inconsistent with the ability to perform the up-to-six hours of sitting (at approximately 2-hour intervals, interrupted by morning and afternoon breaks, and a lunch period) required for sedentary work.") (collective cases). Moreover, some courts have determined that moderate to marked limitations are consistent with sedentary work. *See Josielewski v. Berryhill*, No. 1:15-CV-00728-MAT, 2018 WL

---

[3]    The regulations provide that sedentary work requires an individual to remain in a seated position for most of the day, though "a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." *See* 20 C.F.R. § 404.1567(a). "Occasionally . . . would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday." Soc. Sec. Ruling ("SSR") 96-9p, Titles II & XVI: Determining Capability to Do Other Work-Implications of a RFC for Less Than a Full Range of Sedentary Work, 1996 WL 374185, at *3 (S.S.A. July 2, 1996) (internal quotations omitted).

903471, at *5 (W.D.N.Y. Feb. 15, 2018) ("[T]o be capable of performing sedentary work, an individual generally is required to work in two hour periods, and is not required to sit for six unbroken hours.  As such, this Court has previously held that an assessment of moderate to marked limitations for prolonged sitting is consistent with a finding that a claimant can perform sedentary work.").

Here, the ALJ's limiting Plaintiff to sedentary work with occasional pushing and pulling bilaterally and without any overhead work was not only consistent with Dr. Liu's finding that Plaintiff was mildly to moderately limited in prolonged walking, bending, kneeling, squatting, standing, and prolonged sitting, and moderately limited in lifting, carrying and overhead reaching, but also with the other evidence, including prior administrative findings contained in the record.  It should be noted that the record contains significant evidence documenting Plaintiff's cervical spine impairment that was associated with severe pain in his neck, back, right arm, and tingling, numbness, and atrophy in his right wrist as well as reduced range of motion in his cervical spine and herniation, bulging, displacement, radiculopathy, and spondylosis of several discs in his cervical spine during the relevant period.  (Dkt. 3 at 586-01, 609-15, 618-33, 648-49, 702-04, 713-24, 732-36). But most of that evidence predated April 6, 2021, when Plaintiff underwent a successful cervical discectomy with fusion performed by neurosurgeon James G. Egnatchik, M.D. ("Dr. Egnatchik") to correct his cervical spine impairment and relieve the corresponding symptoms.  (*Id*. at 650-78).  A month after the surgery, Plaintiff reported some residual

- 11 -

numbness in his right hand, but denied radicular pain in his upper extremity during a follow-up visit with Dr. Egnatchik. (*Id.* at 742-46). Examination findings and radiographic imaging documented well-healed incision and intact and stable hardware, and Plaintiff was prescribed over-the-counter medication, stretching exercises, and was referred to physical therapy. (*Id.* at 746-61). During the subsequent August 2021 visit, Plaintiff reported gradual improvement in his preoperative symptoms, mild non-bothersome discomfort across his shoulders and trapezius region and some numbness in his right forearm, as well as increase in his range of motion, and improvement of the right arm strength and muscle atrophy, which were his main complaints prior to the surgery. (*Id.* at 766-67). Upon examination, Plaintiff exhibited a steady gait, grossly intact sensation to light touch and reflexes in both upper and lower extremities, and well-preserved motor testing of his right upper extremities with a slight minimal weakness throughout the right upper extremity when compared to the left. (*Id.*). The record does not contain any further follow-up treatment records from Dr. Egnatchik, although Plaintiff testified that he continued visits with him following August 2021, and that such visits were "status quo."[4] (*Id.* at 47).

---

[4]      The record appears to be missing a treatment note from Dr. Egnatchik issued on November 3, 2021, which was referenced in a report prepared by an independent VE prior to Plaintiff's hearing. (Dkt. 3 at 358-74). The report indicates that during Plaintiff's November 3, 2021, visit, Dr. Egnatchik noted weakness throughout Plaintiff's right upper extremity, as well as numbness in both Plaintiff's hands and difficulty with heavy lifting. (*Id.* at 363). It also states that the physician prepared a narrative report that day, in which he opined that Plaintiff was totally disabled. (*Id.*). It appears that the November 3, 2021, note was not presented to the ALJ because during the hearing and in his post-hearing decision the ALJ stated that the last treatment note from Dr. Egnatchik contained in the

These findings were not inconsistent with the observations of Dr. Liu, who examined Plaintiff six months after his surgery in October 2021 and noted Plaintiff's reduced range of motion in his cervical and lumbar spine and shoulders, positive single leg raise, and decreased sensation to touch in his right hand with full range of motion in his elbows, forearms, wrists, fingers, hips, knees, and ankles, full strength in his grip and upper and lower extremities, as well as intact hand and finder dexterity. (*Id*. at 772).

Plaintiff relies on his subjective complaints of pain and discomfort made to his treatment providers during their examinations instead of relying on their conclusions in support of his argument that the ALJ failed to incorporate Dr. Liu's findings into his RFC. (Dkt. 8 at 13-14). Specifically, Plaintiff cites treatment records of Paul Paterson, M.D. ("Dr. Paterson") who examined him eight months after Dr. Liu and relies on his complaints of radiating pain and numbness in his right thumb and index finger that he endorsed during Dr. Paterson's examination. (*Id*.). However, the presence of a subjective complaint does

---

record was dated August 2021. (*Id*. at 30, 46-47). But even if the treatment note was made part of Plaintiff's medical record and considered by the ALJ, it would not have changed the outcome of the case because Dr. Egnatchik's findings were consistent with the ALJ determination that Plaintiff was limited to sedentary work with occasional pushing and pulling bilaterally and no overhead work. Additionally, Dr. Egnatchik's conclusion that Plaintiff was totally disabled would have been rejected by the ALJ as it relates to matters reserved solely to the Commissioner. *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("[T]he ultimate finding of whether a claimant is disabled and cannot work—[is] reserved to the Commissioner. That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability." (internal quotation and citation omitted)).

not equal the existence of an impairment. Both Dr. Paterson and Dr. Liu noted Plaintiff's complaints of pain in his neck and in the right hand with numbness and tingling in both hands, but despite such complaints, observed Plaintiff's intact hand and finger dexterity and full range of motion in his wrists without any deformity, edema, or tenderness. (Dkt. 3 at 769, 771-72, 778). The only finding of Dr. Paterson that differed from Dr. Liu's was a positive Tinel's test and positive carpal tunnel compression of Plaintiff's right wrist that Dr. Paterson found during Plaintiff's examination, which he corrected by performing a successful right carpal tunnel release procedure the same day he examined Plaintiff. (*Id.* at 778, 780-81). The ALJ acknowledged Plaintiff's carpal tunnel release procedure and noted the lack of any additional records following the surgery that would suggest that Plaintiff was limited in the use of his hands or his neck. (*Id.* at 30).

In addition to considering the records of Plaintiff's treating and examining physicians, the ALJ relied on the prior administrative findings of the State agency reviewing consultants to support his RFC determination. Specifically, the ALJ considered the findings reached by M. Angelorri, M.D., and V. Boronos, M.D., both of whom determined that Plaintiff was capable of performing light work with sitting and standing for over six hours, unlimited pushing and pulling, and limited overhead reaching due to the cervical anterior discectomy and fusion surgery Plaintiff underwent in April 2021 with unlimited fingering and handling. (*Id.* at 71-74, 90-94). Having considered both physicians' findings and having found them partially persuasive, the ALJ restricted

Plaintiff's RFC further by limiting him to sedentary work with no overhead reaching as opposed to light work with limited reaching that both physicians opined to accommodate Plaintiff's hearing testimony regarding his residual pain and weakness following the cervical spine surgery. (*Id.* at 31). This was not improper because the ALJ may reach a determination that does not perfectly correspond with any of the opinions of record, provided that the ALJ's overall assessment is supported by substantial evidence and consistent with applicable law. *See Trepanier v. Comm'r of SSA*, 752 F. App'x. 75, 79 (2d Cir. 2018); *see also Spottswood*, 2024 WL 89635, at *2 (no error for ALJ to assess an RFC slightly more restrictive than suggested by a consultative examiner and a state agency consultant whose opinions the ALJ found to be somewhat persuasive and persuasive); *Baker v. Berryhill*, No. 1:15-cv-00943-MAT, 2018 WL 1173782, at *2 (W.D.N.Y. Mar. 6, 2018) ("Where an ALJ makes an RFC assessment that is more restrictive than the medical opinions of record, it is generally not a basis for remand." (internal quotation marks and citations omitted)).

In sum, the ALJ properly evaluated Dr. Liu's opinion and his analysis complied with the regulations particularly as they required him to discuss the supportability and consistency of the opinion. The ALJ meaningfully engaged in his analysis of the medical record to formulate Plaintiff's RFC. Plaintiff's argument concerning the assessment of the opinion evidence amounts to no more than her disagreement with the ALJ's assessment of the opinion, which is not a basis for remand. *Elizabeth P. v. Comm'r of Soc. Sec.*, No. 1:23-

CV-00652 EAW, 2024 WL 2812434, at *10 (W.D.N.Y. June 3, 2024) ("While Plaintiff may disagree with the ALJ's consideration of the medical evidence of record, that does not mean that . . . the RFC finding is not supported by substantial evidence."). Accordingly, the RFC determination is supported by substantial evidence, and there is no basis for the Court to disturb the Commissioner's determination.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 8) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. 14) is granted. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:      January 15, 2025
            Rochester, New York